UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

In the Matter of:

**LAVERN BERGER and
ELIZABETH BERGER
d/b/a BERGER ENTERPRISES**

Debtors.
_____/

Case No. 11-30804

Chapter 11

Hon.

**FIRST DAY MOTION
FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS
TO USE CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION**

Lavern Berger and Elizabeth Berger d/b/a Berger Enterprises (collectively the "Debtors") state as follows:

**GENERAL ALLEGATIONS**

1. On August 15, 2011 (the "Petition Date"), the Debtors filed their voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code" or the "Code").

2. Since the Petition Date, the Debtors have been operating as debtors-in-possession under §§1107 and 1108 of the Code.

3. No official committee of creditors holding unsecured claims or other committees have been appointed under §1102 of the Code.

4. This Court has jurisdiction over this motion under 28 U.S.C. §§157 and 1334. This matter is a core matter under 28 U.S.C. §157 (b)(1) and (2)(A).

5. Debtors seek approval for the relief requested herein pursuant to §§ 363(b) and 105(a) of the Code.

{00321237.1}                                1

## REQUEST FOR AN EXPEDITED HEARING

6. In order to continue their business operations and to avoid immediate and irreparable harm, the Debtors require the use of cash collateral. Among other necessary payments, the Debtors must fund payroll by no later than August 18, 2011. Accordingly, the Debtors respectfully request that the Court schedule a hearing on this Motion as soon as possible, and in no event later than **August 18, 2011**.

## RELIEF REQUESTED

7. For the reasons set forth below, the Debtors respectfully request that this Court enter an order: (a) granting the Debtors preliminary and final authorization to use cash collateral, and (b) granting replacement liens to Citizens State Bank of Finley as adequate protection.

## DEBTORS' BUSINESS

8. Lavern and Elizabeth Berger own property and provide varied services under the name Berger Enterprises, an unincorporated entity which is located in Emerado, North Dakota ("Enterprise").

9. Enterprise is a multifaceted demolition, home improvement and waste management company serving Central and Eastern North Dakota and Western Minnesota. Enterprise provides numerous and varied services including demolition, excavation, earth work, snow removal and waste removal services. Additionally, Enterprise (i) owns an inert landfill that accepts construction debris and recycles concrete and salvageable materials which are resold, (ii) owns a gravel pit, (iii) operates an aggregate division which sells rock, sand, gravel, clay and

other products, and (iv) is party to a Mining Agreement which grants Enterprise the right to mine rock and other salvageable materials from land known as Gilderhus Resource.

10. Enterprise is located near Grand Forks Air Force Base ("<u>GFAFB</u>") and its inert landfill is located only 1 ½ miles outside of the GFAFB. The other closest landfill is 15 miles further away and has time restrictions on when it can be accessed. This enables Enterprise to have a large advantage when bidding construction projects for the GFAFB as Enterprise is able to dispose of the construction debris at the landfill and avoid the tipping fees the city landfill would charge. Enterprise also accepts debris from other contractors at its landfill.

11. Enterprise recycles and sells the concrete it receives in the landfill as Class 5 aggregate. Prior to a demolition Enterprise also recycles all the salvageable materials (cabinets, windows, doors, etc.) and resells them to the general public.

12. Enterprise also operates an aggregate division. Enterprise has a gravel pit out at the landfill used in the aggregate division. Enterprise leases land on which it mines product and pays the landowner a small royalty on the product. Enterprise severs rock, sand, gravel, etc and this is used on most of Enterprise's projects.

13. Other revenue sources for Enterprise include a snow removal service for GFAFB, a roll-off services for other contractors and charges for accepting materials in the landfill.

14. The Debtors have several acres of farmland in CRP. The Debtors receive payments of $29,397 each year for this.

15. The Debtors own two gas stations with associated convenience stores. Each gas station is separately incorporated.

{00321237.1}                                                  3

## **EVENTS LEADING TO CHAPTER 11**

16. Enterprise achieved a net profit in 2009 of $1,294,293. However, in 2010, Enterprise lost over $2 million.

17. Enterprise dramatic recent losses have largely resulted from a contract entered into by Enterprise with TolTest, Inc.

18. Enterprise was approached by Toltest in 2008 to subcontract for the demolition of 629 homes on the GFAFB. Toltest had an aggressive schedule set up, to complete the project within 13 months. Enterprises voiced their concern about the schedule from the beginning, worried that TolTest did not understand the impact on construction from the weather in North Dakota. Enterprise eventually agreed to subcontract with TolTest and signed an approx $5.5 million contract.

19. In order to adhere to TolTest's schedule, Enterprise needed to "ramp up" with equipment. Enterprise purchased approximately $1.8 million in equipment to complete the project.

20. The project was fraught with delays from the start. Before Enterprise could complete its own work, TolTest was required to prepare the sites. However, TolTest experienced a number of problems, such as asbestos removal issues, telephone line disputes and delay by other parties in removing housing from the sites.

21. The delays were costly to Enterprise because Enterprise was paying the financing costs for all of the new equipment it had purchased to meet the schedule, but could not even begin its work. The new equipment was just sitting idled.

22. Enterprise finally decided to accept additional work to bring in much needed revenue. However, this compounded problems because, when work finally began on the Toltest

project, Enterprise was understaffed and was required to hire subcontractors and pay overtime to complete the project on time and without impacting its other obligations.

23. In October 2010, the Debtors commenced an action against TolTest in the Eastern District of Michigan. The Debtors are seeking a damages award in excess of $2 million.

24. The Debtors financial difficulties were further exacerbated by the actions of its primary lender, Citizens State Bank of Finley ("Citizens"). On May 27, 2011, Citizens commenced an action against the Debtors in the District Court for the County of Steele, North Dakota seeking an award $4,588,708.98, plus interest.

25. In July, Citizens sent notices to most or all of Enterprise's customers directing them to send all payments directly to Citizens.

26. Because of these notices, Enterprise has received almost no payments in August. The Debtors have been informed that many payments have already been made directly to Citizens. The Debtors expect more payments to be made throughout the month. The Debtors require the use of these funds to continue funding payroll and payroll taxes, to purchase fuel and supplies and for other necessary operating expenses. Accordingly, to preserve the business of Enterprise for the benefit of all the Debtors' creditors and the estate, the Debtors filed their voluntary chapter 11 bankruptcy petitions.

## SECURED DEBT

27. Citizens is the Debtors' primary secured creditor and, the Debtors believe, the only secured creditor that may assert an interest in the Debtors' cash collateral

28. Citizens will assert claims against the Debtor for approximately $4,588,708.98 arising from six separate notes, plus interest accruing after the filing of Citizens' complaint

against the Debtors. The Debtors anticipate that Citizens will assert a security interests, in substantially all the Debtors' personal property and a mortgage on the Debtors' farmland.

29. Other creditors that may assert interests in specific real or personal property are: Ford Credit (two vehicles), John Deere Credit (farm equipment), Komatsu Financial (bulldozer), Bremer Bank (land, homestead and vehicles), Harry Godsey (holds a mortgage on Debtors' Arizona home), and GF Finance (equipment). The Debtors do not anticipate that any of these creditors will assert an interest in the Debtors' cash collateral.

## REQUEST FOR USE OF CASH COLLATERAL

30. The Debtors require the use of cash collateral to make payments as necessary for the continuation of Enterprise's businesses, as shown in the budget attached as **Exhibit 1** (the "Budget"). The projected revenue and expenses in the Budget are based upon historical financial data over the past year as well as projected receivables collections going forward.

31. The Budget projects the anticipated revenue and expenses of the Debtors and Enterprise and demonstrates the amount of funds that the Debtors must expend on their respective operations in order to avoid immediate and irreparable harm to the estate for the time period beginning with the filing of this motion through entry of the final order of the Motion. The amount of money the Debtors need to avoid immediate and irreparable harm is as set forth in the Budget.

32. If the Debtors are unable to use cash collateral, the Debtors will be unable to continue operating the business of Enterprise and will be forced to immediately lay off of their employees and liquidate all Enterprise's inventory, equipment and other assets. The immediate cessation of business and "fire-sale" liquidation would not be in the best interests of the Debtors' creditors or the estate.

33. Further, because the Debtors have filed individual Chapter 11 petitions, and because Citizens might assert an interest in the Debtors' personal funds, the Debtors require court authorization to pay everyday personal expenses arising after the Petition Date, such as groceries and utility payments for their home.

34. Accordingly, the Debtors request that they be permitted to use cash collateral on an interim basis as set forth in the Budget until a final order can be entered. Additionally, due to the impossibility of predicting every precise business exigency, the Debtors request that they be permitted to a ten percent variance from the Budget and, to the extent funds allocated to one line item on the Budget are not necessary for that line item, the Debtors request the ability to use those funds on another line item if the need arises. Finally, the Debtors request authorization to continue using cash collateral under the Budget or any updated or substituted budget after a Final Order is entered.

35. The Debtors are confident that their business operations, post-petition, will be profitable and that they will remain profitable during this bankruptcy proceeding.

## ADEQUATE PROTECTION

36. Bankruptcy Code § 363(e) provides that "on request of an entity that has an interest in property used . . . or proposed to be used . . ., the court . . . shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

37. Bankruptcy Code § 361 sets forth a non-exclusive list of forms of adequate protection, which include periodic cash payments, additional liens, replacement liens, and other forms of relief. 11 U.S.C. § 361. A determination of adequate protection is decided on a case-by-case basis, involving a consideration of whether the adequate protection offered by the debtor

{00321237.1}                                7

protects the value of the creditor's interest in the property to be used. In re Martin, 761 F.2d 472, 477 (8th Cir. 1985); In re Braniff Airways, Inc., 783 F.2d 1283, 1286 (5th Cir. 1986). Adequate protection "must be determined liberally, permitting debtors maximum flexibility in structuring a proposal for adequate protection." Unsecured Creditors' Comm. v. Jones Truck Lines, Inc., 156 B.R. 608, 610 (W.D. Ark. 1992).

38. Because, as discussed above, the Debtors' businesses will be profitable through this chapter 11 case, the Debtors may provide adequate protection through the continuing operations of Enterprise and through replacement liens. *See, e.g.*, Martin, 761 F.2d at 477 (8th Cir. 1985) (stating that replacement liens may be sufficient adequate protection to protect a secured creditor's interests in property, and that determinations must be made on a case by case basis); Matter of Pursuit Athletic Footwear, Inc., 193 B.R. 713, 717-18 (Bankr. D. Del. 1996) (finding that credible projections of post-petition operating profits provided the secured creditor with adequate protection).

39. The Debtors, therefore, propose granting Citizens replacement liens[1] upon: (a) all assets in which Citizens held a validly perfected lien as of the Petition Date (the "Collateral"); (b) all property acquired by the Debtors after the Petition Date that is of the same nature, kind or character of the Collateral; and (c) all cash and receivables that are the proceeds, product, offspring or profits of the Collateral. The Debtors anticipate that these replacement liens will adequately protect the Prepetition Lenders for the use of Cash Collateral. Additionally, to the extent necessary to protect Citizens from diminution in the value of its collateral, Citizens shall also have an administrative expense claim in the Debtors' chapter 11 case.

---

[1] The replacement liens shall only be enforceable to the extent necessary for Citizens to recover any diminution in value of its interests in the Debtors' property due to the Debtors' use of cash collateral.

40. On the basis of the adequate protection submitted above, the Debtor submits that it should be granted authority to use Cash Collateral.

41. As part of its request to use Cash Collateral, the Debtor is requesting that this Court allow it to escrow on a monthly basis a $10,000 into the client trust account of its counsel to pay professional fees which may be allowed by this Court for the legal and for financial advisors, if any, employed by the Debtor in connection with this bankruptcy proceeding (the "Professional Fees").

42. The Debtor submits that the Professional Fees will remain the property of the estate, until such time that the fees for such professionals are allowed and the Professional Fees are disbursed. The purpose of this escrow account is to establish a monthly payment plan such that if, and when, fees for the Debtor's professionals are allowed, the Debtor will have already set aside out of the Debtor's Cash Collateral sums that may be used to pay these administrative obligations.

## CONCLUSION

43. Without authority to use cash collateral, the Debtors estate will suffer irreparable harm that would be detrimental to the interests of all the creditors. Without the use of cash collateral, the Debtors could not continue their business operations, could not pay wages and salaries, and could not meet its other administrative expense obligations incurred during this Chapter 11 case.

44. The entry of an order authorizing Debtors' use of cash collateral and granting adequate protection will minimize disruption of the Debtors' business and will maximize the value of the Debtors' assets for the benefit of all creditors, and is, therefore, in the best interests of the estate and the Debtors' creditors.

**WHEREFORE**, the Debtor respectfully requests this Honorable Court enter the proposed Order:

    a. Authorizing the Debtor to use cash collateral,

    b. Granting the adequate protection requested in this Motion; and

    c. Granting such further relief as is just and equitable to Debtor and the estate.

Respectfully submitted:

SCHAFER AND WEINER, PLLC

By: / s / Michael E. Baum
    MICHAEL E. BAUM (P29446)
    HOWARD BORIN (P51959)
    RYAN D. HEILMAN (P63592)
    Attorneys for Debtors
    40950 Woodward Ave., Ste. 100
    Bloomfield Hills, MI 48304
    248-540-3340
    mbaum@schaferandweiner.com

Dated: August 15, 2011

# Berger Enterprises
## Cash Management Summary



Cash In & Expenses



ENDING CASH BALANCE

| Berger Enterprises | 1st Wk Ending 8/19/2011 | 2nd Wk Ending 8/26/2011 Estimated | 3rd Wk Ending 9/2/2011 Estimated | 4th Wk Ending 9/9/2011 Estimated | 5th Wk Ending 9/16/2011 Estimated | 6th Wk Ending 9/23/2011 Estimated | 7th Wk Ending 9/30/2011 Estimated | 8th Wk Ending 10/7/2011 Estimated | 9th Wk Ending 10/14/2011 Estimated | 10th Wk Ending 10/21/2011 Estimated |
|---|---|---|---|---|---|---|---|---|---|---|
| **REVENUES** | | | | | | | | | | |
| Beginning Cash Balance | $ 27,500 | $ 35,899 | $ 204,903 | $ 179,294 | $ 193,294 | $ 229,960 | $ 260,460 | $ 220,960 | $ 157,160 | $ 120,160 |
| A/R - from separate Schedule | $ 50,586 | $ 200,504 | $ 80,692 | $ 50,000 | $ 80,366 | $ 104,000 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 |
| Line of Credit Advances | | | | | | | | | | |
| Line of Credit Payments | | | | | | | | | | |
| **Total Cash Available** | $ 78,086 | $ 236,403 | $ 285,594 | $ 229,294 | $ 273,660 | $ 333,960 | $ 261,960 | $ 222,460 | $ 158,660 | $ 121,660 |
| **EXPENDITURES** | | | | | | | | | | |
| Payroll - Net | $ 21,000 | $ 16,500 | $ 21,000 | $ 21,000 | $ 21,000 | $ 21,000 | $ 21,000 | $ 21,000 | $ 21,000 | $ 21,000 |
| Payroll Taxes - Federal | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 |
| Payroll Taxes - State | | | $ 1,200 | | | | | $ 1,200 | | |
| Recurring Expend. - separate sh. | $ - | $ - | $ 5,000 | $ - | $ - | $ 5,000 | $ - | $ 5,000 | $ - | $ - |
| A/P - from separate schedule | $ 16,187 | $ 10,000 | $ 74,100 | $ 10,000 | $ 17,700 | $ 42,500 | $ 15,000 | $ 33,100 | $ 12,500 | $ 28,500 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| **Total Expenditures** | $ 42,187 | $ 31,500 | $ 106,300 | $ 36,000 | $ 43,700 | $ 73,500 | $ 41,000 | $ 65,300 | $ 38,500 | $ 54,500 |
| **Projected Ending Cash** | $ 35,899 | $ 204,903 | $ 179,294 | $ 193,294 | $ 229,960 | $ 260,460 | $ 220,960 | $ 157,160 | $ 120,160 | $ 67,160 |

EXHIBIT 1

| | 11th Wk Ending 10/28/2011 Estimated | 12th Wk Ending 11/4/2011 Estimated |
|---|---|---|
| | $ 67,160 | $ 78,660 |
| | $ 50,000 | $ 3,500 |
| | $ 117,160 | $ 82,160 |
| | $ 21,000 | $ 21,000 |
| | $ 5,000 | $ 5,000 |
| | | $ 1,200 |
| | $ - | $ 5,000 |
| | $ 12,500 | $ 41,500 |
| | $ 38,500 | $ 73,700 |
| | $ 78,660 | $ 8,460 |


12
$8,460

## Berger Enterprises
### ACCOUNTS PAYABLE FOR MANAGEMENT SUMMARY

| Accounts Payable Vendor Name and/or Project Name | Bill No. | Invoice Date | Amt (Bal) Due | Due Date | Plan to Pay Date | 1st Wk Ending 8/19/2011 Estimated | Actual | 2nd Wk Ending 8/26/2011 Estimated | 3rd Wk Ending 9/2/2011 Estimated | 4th Wk Ending 9/9/2011 Estimated | 5th Wk Ending 9/16/2011 Estimated | 6th Wk Ending 9/23/2011 Estimated | 7th Wk Ending 9/30/2011 Estimated | 8th Wk Ending 10/7/2011 Estimated |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| HE Everson | | | $ 1,500.00 | 8/10/2011 | 8/30/2011 | | | | $ 1,500 | | | | | |
| Nodak Electric | | | $ 800.00 | 8/15/2011 | | $ 800 | | | | | | | | |
| Xcel Energy | | | $ 87.00 | 8/15/2011 | | $ 87 | | | | | | | | |
| Qwest | | | $ 300.00 | 8/15/2011 | | $ 300 | | | | | | | | |
| Verizon | | | $ 1,600.00 | 9/1/2011 | | | | | $ 1,600 | | | | | |
| Insurance | | | $ 2,000.00 | 9/1/2011 | | | | | $ 2,000 | | | | | |
| Insurance | | | $ 30,000.00 | 9/20/2011 | | | | | | | $ 30,000 | | | |
| Fuel | | | $ 5,000.00 | 8/19/2011 | 8/26/2011 | $ 5,000 | | | | | | | | |
| Fuel | | | $ 5,000.00 | 9/2/2011 | | | | $ 5,000 | | | | | | |
| Fuel | | | $ 5,000.00 | 9/9/2011 | | | | | $ 5,000 | | | | | |
| Fuel | | | $ 7,500.00 | 9/16/2011 | | | | | | | $ 7,500 | | | |
| Fuel | | | $ 7,500.00 | 9/23/2011 | | | | | | | | $ 7,500 | | |
| Fuel | | | $ 7,500.00 | 9/30/2011 | | | | | | | | | $ 7,500 | |
| Fuel | | | $ 7,500.00 | 10/7/2011 | | | | | | | | | | |
| Fuel | | | $ 7,500.00 | 10/14/2011 | | | | | | | | | | |
| Fuel | | | $ 7,500.00 | 10/21/2011 | | | | | | | | | | |
| Fuel | | | $ 7,500.00 | 10/28/2011 | | | | | | | | | | |
| Fuel | | | $ 17,500.00 | 11/4/2011 | | | | | | | | | | |
| Qwest | | | $ 300.00 | 9/15/2011 | | | | | | | $ 300 | | | |
| Xcel Energy | | | $ 100.00 | 9/15/2011 | | | | | | | $ 100 | | | |
| Nodak Electric | | | $ 800.00 | 9/15/2011 | | | | | | | $ 800 | | | |
| HE Everson | | | $ 2,500.00 | 9/30/2011 | | | | | | | | $ 2,500 | | |
| Maint & Repair | | | $ 1,600.00 | 10/1/2011 | | | | | | | | | | $ 1,600 |
| Verizon | | | $ 1,600.00 | 10/1/2011 | | | | | | | | | | |
| Maint & Repair | | | $ 5,000.00 | 9/15/2011 | | | | | $ 5,000 | | | | | |
| Maint & Repair | | | $ 5,000.00 | 9/8/2011 | | | | $ 5,000 | | | | | | |
| Qwest | | | $ 300.00 | 10/15/2011 | | | | | | | | | | |
| HE Everson | | | $ 1,500.00 | 10/6/2011 | | | | | | | | | | |
| Nodak | | | $ 800.00 | 10/15/2011 | | | | | | | | | | |
| Verizon | | | $ 1,600.00 | 10/15/2011 | | | | | | | | | | |
| Sales Tax | | | $ 12,000.00 | 10/15/2011 | | | | | | | | | | |
| Maint & Repair | | | $ 5,000.00 | 11/3/2011 | | | | | | | | | | |
| Xcel | | | $ 100.00 | 10/15/2011 | | | | | | | | | | |
| Lease & Rental - Fisher | | | $ 40,000.00 | 10/27/2011 | | | | | $ 40,000 | | | | | |
| Maint & Repair | | | $ 5,000.00 | 9/22/2011 | | | | | | | | $ 5,000 | | |
| Maint & Repair | | | $ 5,000.00 | 9/29/2011 | | | | | | | | | $ 5,000 | |
| Maint & Repair | | | $ 5,000.00 | 10/6/2011 | | | | | | | | | | $ 5,000 |
| Maint & Repair | | | $ 5,000.00 | 10/13/2011 | | | | | | | | | | |
| Maint & Repair | | | $ 5,000.00 | 10/20/2011 | | | | | | | | | | |
| Lease & Rental - Fisher | | | $ 40,000.00 | 9/1/2011 | | | | | | | | | | |
| Lease & Rental - EB | | | $ 9,000.00 | 9/1/2011 | | | | | $ 9,000 | | | | | |
| Lease & Rental - EB | | | $ 9,000.00 | 10/1/2011 | | | | | | | | | | |
| Lease & Rental - EB | | | $ 9,000.00 | 11/1/2011 | | | | | | | | | | $ 9,000 |
| Lease & Rental - Warrior | | | $ 4,000.00 | 9/15/2011 | | | | | | | | | | |
| Lease & Rental - Warrior | | | $ 4,000.00 | 10/15/2011 | | | | | | $ 4,000 | | | | |
| Lease & Rental - Warrior | | | $ 4,000.00 | 11/15/2011 | | | | | | | | | | |

## Berger Enterprises
### ACCOUNTS PAYABLE FOR MANAGEMENT SUMMARY

| Accounts Payable | | | | | 1st Wk Ending 8/19/2011 | | 2nd Wk Ending 8/26/2011 | 3rd Wk Ending 9/2/2011 | 4th Wk Ending 9/9/2011 | 5th Wk Ending 9/16/2011 | 6th Wk Ending 9/23/2011 | 7th Wk Ending 9/30/2011 | 8th Wk Ending 10/7/2011 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Vendor Name and/or Project Name | Bill No. | Invoice Date | Amt (Bal) Due | Due Date | Plan to Pay Date | Estimated | Actual | Estimated | Estimated | Estimated | Estimated | Estimated | Estimated |
| Professional | | | $ 10,000.00 | 9/1/2011 | | | | | $ 10,000 | | | | |
| Professional | | | $ 10,000.00 | 10/1/2011 | | | | | | | | | |
| Professional | | | $ 10,000.00 | 11/1/2011 | | | | | | | | | $ 10,000 |
| HIDDEN ROWS MUST BE EMPTY, DEVOID OF ALL ENTRIES. SEE INSTRUCTION PAGE. | | | $ 361,887 | | | $ 16,187 | $ - | $ 10,000 | $ 74,100 | $ 10,000 | $ 17,700 | $ 42,500 | $ 15,000 | $ 33,100 |